# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RODNEY FARNSWORTH III, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil No. |
| v. ) | 13-11192-FDS |
| ) | |
| TOWBOAT NANTUCKET SOUND, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO CONFIRM THE ARBITRATION AWARD

**SAYLOR, J.**

This is a claim arising out of a marine salvage contract. Plaintiff Rodney Farnsworth III signed a salvage contract with defendant Towboat Nantucket Sound, Inc., on board his vessel at 3:30 a.m., after defendant's towboat had pulled the vessel off a rocky shoal. The contract included a mandatory arbitration clause. Farnsworth contends, among other things, that the arbitration clause is voidable because he was forced to sign the salvage contract under duress. This case was stayed pending the outcome of the arbitration proceedings.

On November 15, 2013, the arbitration panel issued a decision in favor of Towboat Nantucket and denying the relief sought by Farnsworth. Towboat Nantucket has moved to confirm the arbitration award.

For the following reasons, the motion to confirm the arbitration award will be granted.

## I. Background

### A. Factual Background

The facts are set forth as alleged in the complaint unless otherwise noted.[1]

On July 28, 2012, at around 8:00 p.m., Rodney Farnsworth III was anchoring his motor yacht, the M/Y AURORA, in the Weepecket Island anchorage in Buzzards Bay, Massachusetts. According to Farnsworth, an errant depth-sounder reading caused the vessel to run aground. He contends that despite the grounding, the vessel was undamaged, completely buoyant, and watertight.

According to defendant, that evening there was a line of thundershowers moving east through the Woods Hole area with heavy rain, lightning, and winds around 20 knots gusting to 33 knots. (Brown Aff., Docket No. 28, Ex. A ¶ 2). The thunderstorms had many lightning strikes and reduced visibility to less than 300 feet. (*Id.* ¶ 6). The tide was low and the water in the area near Farnsworth's vessel was shallow and rocky. (*See id.* ¶¶ 2, 9, 12).

Farnsworth requested assistance from Towboat New Bedford on his radio. He had a towing insurance policy that covered tows, but not salvages. (*Id.* ¶ 14). Approximately an hour after the vessel was grounded, the vessel NORTHPOINT from Towboat Nantucket responded to his call. Farnsworth allowed the NORTHPOINT to give him a towline. The vessel was secured but was not moved in order to prevent possible damage. (*Id.* ¶¶ 10-12).

After the line was made secure, the captain of the towboat called Farnsworth on his cell phone. According to the captain, he told Farnsworth that the towboat's services would not be

---

[1] In determining whether a plaintiff's claims fall within the scope of an arbitration clause, the Court focuses "on the allegations underlying [the] claims in the [c]omplaint." *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 467, 578 (1st Cir. 2011).

covered by the towing policy "due to the rocky location and weather conditions where he was stranded." (*Id.* ¶ 14).

Between midnight and 1:00 a.m., the tide rose. By about 2:00 a.m., the NORTHPOINT was able to pull the AURORA to deeper water. In the course of that operation, the vessel was pulled onto rocks, causing some damage to the hull. The vessel, however, remained operational and (according to Farnsworth) seaworthy.

Farnsworth then cast off the towline and sailed the AURORA to the harbor in Woods Hole. The NORTHPOINT also sailed to Woods Hole. While the ships were anchored there, two Towboat Nantucket employees boarded the AURORA.

Farnsworth contends that he was forced to sign a standard towing reimbursement agreement for the towing of his vessel. He was also required to execute another contract giving Towboat Nantucket rights to a salvage award for towing the vessel. After refusing three times, Farnsworth eventually signed the salvage contract. The contracts were signed at approximately 3:30 a.m. on July 29.

Farnsworth contends that he had no choice to sign the salvage contract because he was aboard his vessel with two Towboat Nantucket employees in a remote location at a late hour. According to Farnsworth, the employees told him they would not leave without the signed contract.

The salvage contract contained an arbitration provision that stated as follows:

> In the event of any dispute arising out of this Contract including any dispute regarding this salvage or concerning the reasonableness of any fees or charges hereunder, all parties agree to binding arbitration in the United States in accordance with the Rules for Recreational and Small Commercial Vessel Salvage Arbitration of the Society of Maritime Arbitrators, Inc. Arbitrators shall be familiar with maritime salvage. Any award hereunder shall include interest, attorneys' fees and costs, and arbitration

3

administration expenses and shall be final and binding. For the purpose of enforcement, the Award may be entered for judgment in any court of competent jurisdiction.

(Salvage Contract, Docket No. 28, Ex. E, at 1).

### B. Towing and Salvaging

A tow is "a service rendered by one vessel to aid the propulsion or to expedite the movement of another vessel." 2 Admiralty & Mar. Law § 12-1 (5th ed.). Generally, a contractual compensation rate is paid for a tow. *Id.* § 12-2.

In contrast, salvage "is the compensation allowed to persons by whose voluntary assistance a ship at sea or her cargo or both have been saved in whole or in part from impending sea peril, or in recovering such property from actual peril or loss, as in cases of shipwreck, derelict, or recapture." *The Sabine*, 101 U.S. 384, 384 (1879); *see also Faneuil Advisors, Inc. v. O/S Sea Hawk*, 50 F.3d 88, 92 (1st Cir. 1995) ("The admiralty doctrine of salvage, which rewards volunteers who save ships from dangers at sea, is an equitable doctrine that dates back to the Romans."). "The presence of a marine peril is necessary for salvage; otherwise the contract is only for towage." 2 Admiralty & Mar. Law § 12-1.

When a vessel is salvaged, the salvor is entitled to compensation based on (1) the labor expended by the salvor, (2) the promptitude, skill, and energy displayed by the salvor, (3) the value of the property employed by the salvor, (4) the risk incurred by the salvor, (5) the value of the property saved, and (6) the degree of danger from which the property was rescued. *The Blackwall*, 77 U.S. 1, 14 (1869); *see also New Bedford Marine Rescue, Inc. v Cape Jeweler's Inc.*, 240 F. Supp. 2d 101, 115 (D. Mass. 2003) (reciting the *Blackwall* factors and awarding $11,000 award for salvage of a vessel worth $60,000). As a result, salvage awards are generally higher than the compensation for a tow. *Cf.* 2 Admiralty & Mar. Law § 16-5 ("[T]he theory of

4

salvage law is that the award comes out of the property saved . . . .").

Towboat Nantucket claimed that Farnsworth owed it $95,546 for salvaging the AURORA, or 15 percent of the vessel's undisputed value of $689,972. (Arbitration Award, Docket No. 26, Ex. A at 5, n.9).

### C. Procedural Background

On May 15, 2013, Farnsworth filed this action, requesting a preliminary injunction to prevent defendant from enforcing the arbitration clause of the salvage contract. On May 17, 2013, the Court denied the motion for preliminary injunction and stayed the case pending the outcome of arbitration.

On November 15, 2013, an arbitration panel from the Society of Marine Arbitrators awarded defendant $50,000. In its decision, the panel specifically found that Farnsworth did not enter into the salvage contract under duress. Defendant filed a motion to affirm the arbitration award on January 17, 2014.

## II. Standard of Review

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The statute was enacted in order to reverse longstanding judicial hostility to arbitration agreements and to "place such agreement upon the same footing as other contracts." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 271 (1995) (internal quotations omitted). When "construing an arbitration clause, courts and arbitrators must 'give effect to the contractual rights and expectations of the parties.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (quoting *Volt v. Board of*

*Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). The act promotes "a liberal federal policy favoring arbitration agreements . . . . [A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

A party may request that a court confirm an arbitration award "within one year after the award is made." 9 U.S.C. § 9. "[T]he court must grant such an order unless the award is vacated, modified, or corrected as prescribed" by the FAA. *Id.* An award may be vacated "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10.

### III. Analysis

Plaintiff contends that because he entered into the arbitration clause of the salvage contract under duress, the arbitration clause was voidable. He further contends that the arbitration panel acted without authority because he had voided the arbitration clause. Defendant contends that plaintiff's duress claim is arbitrable because it is a general challenge to the contract itself, not a specific challenge to the arbitration clause. Defendant further contends that the arbitration award should be confirmed because the panel decided that plaintiff did not sign the contract under duress.

#### A. Arbitrability of the Dispute

The threshold question in this case is whether the Court or the arbitration panel should decide whether the claim is arbitrable. "As a general rule, and in the absence of an express agreement to the contrary, courts decide questions of arbitrability, that is, questions about whether the parties have agreed to submit a given dispute to arbitration." *Escobar-Noble v.*

*Luxury Hotels Intern. of Puerto Rico, Inc.*, 680 F.3d 118, 122 (1st Cir. 2012). Where, as here, the dispute is "about whether the parties are bound by a given arbitration clause," the dispute "typically involves arbitrability." *Id.* at 123 (internal quotations omitted).

The arbitration clause in this case states that it applies "[i]n the event of any dispute arising out of [the salvage contract] including any dispute regarding [the] salvage or concerning the reasonableness of any fees or charges." (Salvage Contract ¶ 6). A dispute as to whether the arbitration clause itself is valid does not arise under the contract. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010) ("If a party challenges the validity . . . of the precise agreement to arbitrate at issue, the federal court must consider the challenge . . . ."). Under the plain words of the arbitration clause, there was no "express agreement" between the parties that this particular dispute would be decided in arbitration. Accordingly, whether plaintiff could void the arbitration clause is a question of arbitrability that this Court must decide. *See Granite Rock Co. v. International Bhd. of Teamsters*, 561 U.S. 287, 299-300 (2010) (arbitration clause is valid only where "the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue. Where a party contests either or both matters, 'the court' must resolve the disagreement.") (internal citations and alterations omitted).

### B. Character of Plaintiff's Challenge

Under the FAA, arbitration agreements can be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Those grounds include "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). "When

7

deciding whether the parties agree to arbitrate a certain matter, courts generally should apply ordinary state-law principles that govern the formation of contracts." *Dialysis Access Ctr.*, 638 F.3d at 376 (1st Cir. 2011) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

There are two types of challenges under § 2 of the FAA. *See Rent-A-Center*, 561 U.S. at 70. "'One type challenges specifically the validity of the agreement to arbitrate,' and 'the other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.'" *Id.* (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)).

"[O]nly the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable. . . . That is because § 2 states that a 'written provision' 'to settle by arbitration a controversy' is 'valid, irrevocable, and enforceable' *without mention* of the validity of the contract in which it is contained." *Id.* (quoting 9 U.S.C. § 2) (emphasis in original). That principle applies "the requirement in § 2 of the FAA that courts treat an arbitration clause as severable from the contract in which it appears and enforce it according to its terms unless the party resisting arbitration specifically challenges the enforceability of the arbitration clause itself." *Dialysis Access Ctr.*, 638 F.3d at 377 (quoting *Granite Rock*, 561 U.S. 301). Therefore, an arbitration clause must be enforced "unless the validity challenge is to the arbitration clause itself." *Granite Rock*, 561 U.S. at 299 (internal quotations omitted).

Plaintiff therefore cannot challenge the arbitration panel's authority by alleging that he

entered into the salvage contract under duress. Instead, he must specifically allege that he agreed to the *arbitration clause* under duress. When deciding whether a plaintiff has specifically challenged an arbitration clause, the analysis "centers on the factual allegations of the complaint." *Escobar-Noble*, 680 F.3d at 122.

"It is well established that a contract entered into under duress is voidable." *Cabot Corp. v. AVX Corp.*, 448 Mass. 629, 637 (2007). A voidable contract "is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract." Restatement (Second) of Contracts § 7 (1981). "To avoid a contract on the basis of duress, a party must show that conduct by the other party caused him to enter into the contract 'under the influence of such fear as precludes him from exercising free will and judgment.'" *Coveney v. President & Trustees of Coll. of Holy Cross*, 388 Mass. 16, 22 (1983) (quoting *Avallone v. Elizabeth Arden Sales Corp.*, 344 Mass. 556, 561 (1962)).

The complaint here is devoid of any specific allegations that plaintiff agreed to the arbitration clause (as opposed to the contract itself) under duress. Plaintiff, however, contends that because duress can only be directed at an entire contract, it applies to both the salvage contract and the arbitration clause within the salvage contract. *See Spahr v. Secco*, 330 F.3d 1266, 1273 (10th Cir. 2003) (holding that because a mental capacity challenge cannot specifically be directed at an arbitration clause, the challenge also applies to the arbitration clause in a contract). He contends that because he was under duress when he signed the salvage agreement, he was also under duress when agreeing to the arbitration clause. That contention—while not without considerable appeal—is without merit under the law.

The Supreme Court, in *Buckeye Check Cashing*, left open the question of whether mental

9

capacity challenges to a contract are arbitrable. 546 U.S. 444 n.1 (citing *Spahr*, 330 F.3d at 1266). The distinction it drew was "between challenges to a contract's validity, which are arbitrable, and challenges to a contract's formation, which generally are not." *SBRMCOA, LLC v. Bayside Resort, Inc*, 707 F.3d 267, 274 (3d Cir. 2013) (citing *Buckeye Check Cashing*, 546 U.S. at 444 n.1).

Generally, "the formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." Restatement (Second) of Contracts § 17. "Duress . . . may completely prevent the mutual assent necessary for the formation of a contract or sale, or, as is more frequently the case, may be merely a ground for allowing the avoidance of a bargain by its victim, whose expression of mutual assent was improperly obtained." 28 Williston on Contracts § 71:8 (4th ed.). "If conduct that appears to be a manifestation of assent by a party who does not intend to engage in that conduct is physically compelled by duress, the conduct is not effective as a manifestation of assent" and no contract is formed. Restatement (Second) of Contracts § 174; *see also* 28 Williston on Contracts § 71:8 (no assent is given when the party acts as "a mere mechanical instrument"). In contrast, "[i]f a party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative, the contract is voidable by the victim." Restatement (Second) of Contracts § 175. In that situation a contract is formed, but the victim may avoid the legal consequences of the contract. *Id.* § 7.

The complaint alleges that plaintiff was compelled into signing the salvage contract under duress. It alleges that the presence of defendant's employees on the vessel, the circumstances surrounding their presence, and their refusal to leave until plaintiff signed the

salvage contract constituted an improper threat. However, the complaint does not allege that defendant actually physically compelled him to sign the salvage contract—for example, by putting a gun to his head or manually forcing him to sign the contract. *See Barnette v. Wells Fargo Nevada Nat. Bank of San Francisco*, 270 U.S. 438, 444 (1926) ("Acts induced by duress such as is here relied on, which operates only on the mind and falls short of actual physical compulsion, are not void in law, but are voidable only."). Therefore, plaintiff's duress claim is arbitrable if it falls within the ambit of the arbitration clause.

C. **Scope of the Arbitration Clause**

The arbitration clause, by its own terms, covers "any dispute arising out" of the contract. (Salvage Contract at 1). Defendant contends that the arbitration clause in this case is essentially the same as the one in *Dialysis Access Center* and should be construed in a similar manner.

The arbitration clause in *Dialysis Access Center* bound the parties to arbitration in "any dispute that may arise under" the contract. 638 F.3d at 377 (internal alterations omitted). The plaintiff challenged the validity of the contract, claiming that it was voidable because it was induced by fraud. *Id.* at 378. The court first observed that the plaintiff's challenge was to the validity of the contract, not its existence. *Id.* at 381. The court then held that the plaintiff's fraudulent-inducement claim was covered by the arbitration clause for two reasons. *Id.* at 329, 382. First, it found that the arbitration clause was, at the very least, ambiguous as to whether it covered the plaintiff's fraudulent-inducement claim. *Id.* at 379. Because there is a presumption in favor of arbitration based on "strong federal pro-arbitration policy," the court held that the arbitration clause covered the plaintiff's claim of fraudulent inducement. *Id.* Second, the court found that the "arising under" language in the arbitration clause likely covered the plaintiff's

11

fraudulent-inducement claim in any event. *See id.* at 382 ("[W]e find that it cannot be said with positive assurance that the 'arising under' language used in the [a]rbitration [c]lause is not sufficient to encompass the current dispute over the validity of the [contract].").

The arbitration clause in this case is virtually indistinguishable from the one in *Dialysis Access Center*. The salvage contract states that binding arbitration covers "any dispute arising out" of the contract, while the arbitration clause in *Dialysis Access Center* stated that it covered "any dispute that may arise under" the contract. *Compare* (Salvage Contract at 1) *with* 638 F.3d at 377. And, like in *Dialysis Access Center*, the allegations in the complaint challenge the validity of the salvage contract, not its existence. Therefore, the scope of the arbitration clause "is sufficiently broad to encompass [plaintiff's] claims and the resulting dispute over the validity of the [salvage contract]." *Dialysis Access Ctr.*, 638 F.3d at 382.

Therefore, the arbitration panel acted within its authority when deciding that plaintiff did not enter into the salvage contract under duress. Defendant's motion to confirm the arbitration panel's award will be granted.[2]

The Court is certainly sympathetic to plaintiff's contention that he was treated unfairly. He signed a contract under circumstances that, to put it charitably, were not conducive to negotiation. The towing company then sought an award under that contract of more than $95,000 (eventually reduced to $50,000). Nonetheless, the Court is not free to impose a different result. Under the circumstances, the Court has no option but to affirm the arbitration award.

---

[2] Defendant also contends that this case should be dismissed as moot because it has already been paid the arbitration award. The case is not moot because the arbitration award could have been vacated if plaintiff had pleaded and proved a proper challenge to the salvage contract's arbitration clause.

## IV. Conclusion

For the foregoing reasons, defendant's motion to confirm the arbitration award is GRANTED. Plaintiff's case is DISMISSED.

**So Ordered.**

                                                           /s/ F. Dennis Saylor
                                                           F. Dennis Saylor IV
Dated: July 28, 2014                                       United States District Judge